# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Ronald Francis Croteau, | ) |
| | ) Civil Action No.: 2:18-cv-00773-JMC |
| Petitioner, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| Warden Hector Joyner, | ) |
| | ) |
| Respondent. | ) |

This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") entered on August 28, 2018 (ECF No. 36). The Report addresses Petitioner Ronald Francis Croteaus's ("Petitioner") Petition for Writ of Habeas Corpus ("Habeas Petition") (ECF No. 1). The Report recommends the court dismiss Petitioner's Habeas Petition as moot, or in the alternative, grant Respondent Warden Hector Joyner's ("Respondent") Motion to Dismiss (ECF No. 17). (ECF No. 36 at 2.) For the reasons stated herein, the court **ACCEPTS** the Report and **DISMISSES** Petitioner's Habeas Corpus Petition as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth the relevant facts and legal standards which this court incorporates herein without a full recitation. (*Id.* at 1–5.) As brief background, Petitioner, proceeding pro se and in forma pauperis, filed his Habeas Petition on March 21, 2018. (ECF No. 1.) Petitioner challenges the change of the date of his halfway-house placement from April 12, 2018, to October 9, 2018. (*Id.* at 2.) For relief, Petitioner requests "immediate release on April 12, 2018 . . . and transfer to a [h]alfway [h]ouse or . . . [h]ome [c]onfinement program and to be released from there to direct

1

home confinement on [his] [h]ome [d]etention eligibility date of July 26, 2018[,] 'NOT' October 9, 2018 . . . ." (*Id.* at 8.)

On May 29, 2018, Respondent filed a Motion to Dismiss Petitioner's Habeas Petition. (ECF No. 17.) First, Respondent argues Petitioner has failed to exhaust available administrative remedies, as required to pursue habeas relief. (*Id.* at 6–7.) On the merits, Respondent argues that the Bureau of Prisons ("BOP")

> has fulfilled the requirements under 18 U.S.C. §§ 3621(b)[1] and 3624(c)[2] by evaluating [Petitioner] for an RRC placement and/or Home Confinement on an individualized basis using the five factors of § 3621(b). As the [c]ourt has no authority to change the length of [Petitioner's] RRC placement or order [h]ome [c]onfinement, the [Habeas] [P]etition should be denied.

(*Id.* at 12.)

Also on May 29, 2018, the Magistrate Judge entered a *Roseboro*[3] Order, advising Petitioner of the procedure regarding motions to dismiss and the consequences of failing to adequately respond. (ECF No. 18.)

On June 15, 2018, Petitioner replied to Respondent's Motion (ECF No. 17), asserting several new claims distinct from the claim in his Habeas Petition. (ECF No. 23 at 2–11, 12–17, 19–27.) As to the date of his placement in a halfway house or home confinement—the subject of his Habeas Petition—Petitioner asserts he was entitled to an individualized assessment and that

---

[1] Under § 3621(b) the BOP is authorized to designated a prisoner's place of imprisonment. 18 U.S.C. 3621 ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."). Section 3621(b) also sets forth five (5) criteria the BOP should consider in making imprisonment placement decisions. *See* 18 U.S.C. § 3621(b)(1)–(5).
[2] Section 3624(c) governs prerelease custody in a community correctional facility or home confinement.
[3] *See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that "[a] [pro se] plaintiff be advised of his right to file counter-affidavits or other responsive material").

2

Respondent is "incorrect" about the district court lacking the authority to order Petitioner be placed in a halfway house (*Id.* at 12, 17–18.)

On August 8 and 9, 2018, Petitioner filed Motions requesting to stay the proceedings until after Petitioner moved to either a halfway house or his "approved home address." (ECF Nos. 30 at 1; 31 at 1.)

On August 28, 2018, the Magistrate Judge entered her Report. (ECF No. 36.) The Magistrate Judge began by noting Petitioner "does not challenge the validity of his conviction. He challenges only the delay of his entry into a '[h]alf [w]ay [h]ouse' and the failure to place him in [h]ome [c]onfinement." (*Id.* at 4.) The Magistrate Judge found that because Petitioner had been placed in a Residential Reentry Center ("RRC") after Petitioner filed his Habeas Petition[4]—and prior to the Magistrate Judge entering her Report—"the [c]ourt c[ould] no longer provide Petitioner the relief he seeks, and there is no basis to find that either exception to the mootness doctrine applies." (*Id.* at 4–6.) For these reasons, the Report recommends dismissing Petitioner's Habeas Petition as moot. (*Id.* at 6.)

In the alternative, the Magistrate Judge recommends dismissing Petitioner's Habeas Petition and granting Respondent's Motion to Dismiss, finding (1) that Petitioner did not exhaust available administrative remedies, nor make a showing of futility, and (2) that "the BOP reviewed Petitioner's RRC placement on an individual basis using the five factors of § 3621(b), . . . a placement decision was made based on Petitioner's record and available space[,] . . . [and] Petitioner has not shown that this [court] has any authority to set or change [Petitioner's] length of RRC placement." (*Id.* at 9, 13.) Additionally, in light of the Magistrate Judge's recommendation

---

[4] The Report states that, "On August 28, 2018, Petitioner notified the Clerk of Court via telephone that his address has changed to Dismas Charities in Orlando, Florida." (ECF No. 36 at 1.)

3

to dismiss Petitioner's Habeas Petition as moot, the Magistrate Judge also recommends denying as moot Petitioner's following motions: (1) Motion to Amend/Correct Petition (ECF No. 16); (2) Motion to Supplement (ECF No. 20); (3) Motion to Appoint Standby Counsel (ECF No. 22); (4) Motion to Vacate Void Judgment (ECF No. 26); (5) Motion for Hearing (ECF No. 27); (6) Motion for Default Judgment (ECF No. 29); (7) Motion to Stay pending address change (ECF No. 30); and (8) Motion to Stay (ECF No. 31).

On September 4, 2018, Petitioner formally notified the court of his change of address from the Federal Correctional Institution in Estill, South Carolina, to Dismas Charities of Orlando in Orlando, Florida. (ECF No. 38 at 1.)

On September 17, 2018, Petitioner filed an Objection to the Report. (ECF No. 42, 43.)[5] Petitioner objects to: (1) "false accusations without fact, evidence or witnesses to back up this court[']s right to dismiss without prejudice [P]etitioner[']s transfer to [a] RRC facility, as moot," (ECF No. 43 at 2); (2) the Magistrate Judge's recommendation to grant Respondent's Motion to Dismiss because "not one of Respondent's oppositions, motions or documents have actual evidence, facts or witnesses signed under oath required by federal rules of procedure to give this court jurisdiction over this subject matter," (*Id.* at 3); and (3) the Magistrate Judge's "recommended denial of [P]etitioner[']s appealability without substance, case law or federal rule to provide insight on wh[ere] [the Magistrate Judge's] constitutional standing comes from to deny . . . [P]etitioner[']s right to redress of his grievance [in] this district court," (*Id.*).

---

[5] In Petitioner's filing titled "Notice [of] Objection to Report and Recommendation," Petitioner states, "Petitioner's objections specifically identify the portions of the report and recommendation that [P]etitioner objects to [and] are made within his [M]otion to [R]educe to [J]udgment . . . ." (ECF No. 42 at 1.) Thus, the substance of Petitioner's objections to the Report are actually found in his "Motion to Reduce Judgment on the Merits Not on the Assumptions and Accusations" (ECF No. 43).

4

## II. STANDARD OF REVIEW

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. As such, the court is charged with making de novo determinations of those portions of the Report and Recommendation to which specific objections are made. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

Objections to a Report must identify specific findings of the Report and state the basis for objecting to those findings. Fed. R. Civ. P. 72(b). "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Failure to timely file a *specific*, written objection to a Report will result in a waiver of the right to appeal from an order based upon a Report. 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 845-47 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). If a party fails to properly object because the objection lacks the requisite specificity, then de novo review by the court is not required. *See Suttles v. Chater*, No. 96-2138, 1997 WL 76900, at *1 (4th Cir. Feb. 25, 1997) (holding that "general, non-specific objections" are not sufficient when objecting to a magistrate judge's recommendation); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1985)).

The court is required to interpret pro se documents liberally and will hold those documents to a less stringent standard than those drafted by attorneys. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978); *see also Hardin v. United States*, C/A No. 7:12–cv–0118–GRA, 2012 WL 3945314, at *1 (D.S.C. Sept. 10, 2012). Additionally, pro se documents must be construed in a manner, "no matter how inartfully pleaded, to see whether they could provide a basis for relief." *Garrett v. Elko*, No. 95-7939, 1997 WL 457667, at *1 (4th Cir. Aug. 12, 1997).

## III. DISCUSSION

At the outset, the court acknowledges Petitioner's Objection may be untimely. The Magistrate Judge's Report, filed on August 28, 2018—and mailed to Petitioner on the same day—advised Petitioner that any objections to the Report had to be filed by September 11, 2018. (ECF Nos. 36, 37.) Because the Report was delivered to Petitioner by mail, under Rule 5(d) of the Federal Rules of Civil Procedure, Petitioner had an additional three days to file any objections. (*See id*.) Thus, any objections by Petitioner were due by September 14, 2018. Petitioner's Objections were received by the Clerk of Court for the United States District Court of South Carolina on September 17, 2018. (ECF No. 23.) However, because Petitioner is in federal custody,[6] pursuant to the "prison mailbox rule" under *Houston v. Lack*, 487 U.S. 266, 276 (1988),

---

[6] As far as the court can tell, whether the prison mailbox rule under *Houston v. Lack* applies to halfway houses has not been addressed by the United States Supreme Court or any of the federal courts of appeals. However, some district courts have found the prison mailbox rule does apply in this context. *See, e.g*, *United States v. Bliss*, No. MO:11-CR-121, 2014 WL 12703115, at *3 (W.D. Tex. May 30, 2014) ("This assumes the prison mailbox rule applies to halfway houses. This [c]ourt can find no case law saying that it definitively does apply in the Fifth Circuit, although *Rhine v. City of Mansfield, Texas*, 2013 WL 1155419 at n.2 (N.D. Tex. March 21, 2013), did find Rhine to be incarcerated for purposes of the mailbox rule while in a halfway house.").

The statute authorizing the BOP to make halfway house placements refers to placement in a "community corrections facility" as "imprisonment." *See, e.g.*, 18 U.S.C. § 3621(b) ("Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of

his Objections were considered filed on the date they were delivered to the authorities of Dismas Charities of Orlando, where Petitioner was housed at the time, for forwarding to the Clerk of Court. (*See* ECF No. 38.) Nothing in Petitioner's Objection, or on the envelope in which his Objection was mailed, indicates when it was received by authorities at Dismas Charities for mailing to this court. (*See* ECF Nos. 42, 42-1, 43, 43-1, 43-3.) However, the Certificate of Service by Mail accompanying Petitioner's Objection (and signed by Petitioner) states that he "placed a copy of the fore going (sic) document in the US-Mail for delivery" on September 7, 2018. (ECF No. 42 at 2.) Several district courts have found a petitioner's filing timely based on the date on the certificate of service. *See Buxton v. Ballard*, No. 3:16-CV-04489, 2017 WL 1538163, at *2 (S.D.W. Va. Apr. 4, 2017), *report and recommendation adopted*, No. CV 3:16-4489, 2017 WL 1536448 (S.D.W. Va. Apr. 26, 2017) ("Pursuant to the 'prison mailbox rule,' the undersigned applies the date on [the] [p]etitioner's certificate of service as opposed to the date that the clerk of court received his petition. (ECF No. 2 at 68); *United States v. McNeill*, 523 F. App'x 979, 981

---

the Bureau under this section to determine or change the place of imprisonment of that person."). Moreover, in several contexts, several of the federal circuit courts of appeals have found prisoners in halfway houses to be in "custody." *See, e.g.*, *United States v. Burke*, 694 F.3d 1062, 1066 (9th Cir. 2012) ("We have held that a person may be in 'custody' . . . when released to a halfway house or residential reentry center."); *United States v. Swanson*, 253 F.3d 1220, 1224 (10th Cir. 2001) ("Life at a halfway house undoubtedly entails fewer restrictions than life in prison, but one who lives there under court order is not free to come and go at will. In that respect, residence at a halfway house is a form of 'custody.'"); *United States v. Rudinsky*, 439 F.2d 1074, 1076 (6th Cir. 1971) ("Although it is true that the appellant was permitted a degree of freedom at the Treatment Center, we find that he was still in 'custody' during his term there. A person may still be in custody, even though not under constant supervision of guards, so long as there is some restraint upon his complete freedom.").

Accordingly, the court finds Petitioner, who submitted his Objection while incarcerated at a halfway house, was still in custody for purposes of the prison mailbox rule. *See United States v. McNeill*, 523 F. App'x 979, 982 (4th Cir. 2013) ("The pro se prisoner does not have the privilege of shepherding his documents through a complex legal system. His lack of control is a deprivation for which the prison mailbox rule compensates.").

(4th Cir. 2013) ('pro se litigant's legal papers are considered filed upon 'delivery to prison authorities, not receipt by the clerk.')."); *Williams v. Smith*, No. 1:07-CV-00828, 2013 WL 12123240, at *1, *1 n.1 (M.D.N.C. Apr. 3, 2013) (finding a petitioner's notice of appeal timely filed based on the attached certificate of service).

However, even if Petitioner's Objection is timely, and—liberally construing Petitioner's Objection—the court could find Petitioner's Objection directed the court to a specific error in the Report, the court agrees with the Magistrate Judge that Petitioner's Habeas Petition is moot. (*See* ECF No. 36 at 2.) Petitioner's Habeas Petition requests that the court order the BOP to immediately release him to a halfway house or home confinement program. (ECF No. 1 at 8.) On September 4, 2018, Petitioner notified the court that he had been moved from the Federal Correctional Institution in Estill, South Carolina, to Dismas Charities of Orlando in Orlando, Florida. (ECF No. 38 at 1.) As the Magistrate Judge noted, Petitioner's placement in this halfway house is also reflected on the BOP's website, which states Petitioner is located at "Orlando RMM" and will be released on January 11, 2019.[7] Accordingly, Petitioner's request for habeas relief is moot. *See McKinney-Bey v. Hawk-Sawyer*, 69 F. App'x 113, 113 (4th Cir. 2003) ("In his petition, Appellant sought an immediate transfer from prison to a half-way house and monetary damages for delaying his transfer. A review of the record indicates that Appellant received the transfer on April 30, 2003; thus, his request for habeas relief is moot. *See Nakell v. Attorney Gen. of N. Carolina*, 15 F.3d 319, 322 (4th Cir. 1994) (a case becomes moot when the issues presented are no longer live, or when parties lack a cognizable interest in the outcome).").

## IV. CONCLUSION

---

[7] *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 25, 2018). "RRM" stands for "Residential Reentry Management. *RRM Orlando*, Federal Bureau of Prisons, https://www.bop.gov/locations/ccm/cor/ (last visited Oct. 25, 2018).

8

After a thorough review of the Report and the record in this case, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 36); **DISMISSES**, without prejudice, Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) as moot; and **DENIES** as moot Petitioner's following motions: (1) Motion to Amend/Correct Petition (ECF No. 16); (2) Motion to Supplement (ECF No. 20); (3) Motion to Appoint Standby Counsel (ECF No. 22); (4) Motion to Vacate Void Judgment (ECF No. 26); (5) Motion for Hearing (ECF No. 27); (6) Motion for Default Judgment (ECF No. 29); (7) Motion to Stay pending address change (ECF No. 30); (8) Motion to Stay (ECF No. 31); and (9) Motion to Reduce Judgment (ECF No. 43).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

October 30, 2018
Columbia, South Carolina